**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

BERNARD RICE, etc.,

               Plaintiff,

vs.                                     Case No. 3:05-cv-1238-J-32TEM

FREDERICK L. RICE, etc., et al.,

               Defendants.

---

## ORDER

      This case is before the Court on plaintiff Bernard Rice's Motion for Partial Summary Judgment. (Doc. 59). Defendants Frederick L. Rice and Marian Rice filed a response in opposition. (Doc. 65).

## I.    BACKGROUND

      This is a real property dispute involving two brothers. From 1974 through 1995, brothers Bernard Rice and Frederick Rice acquired, as tenants in common, five parcels of land in St. Augustine, Florida, via separate warranty deeds from their mother, Rose N. Rice, now deceased. (Doc. 1, Ex. A - E, Complaint). As tenants in common, each brother owned an undivided 50% interest in each of the five properties. (Id.). On July 1, 2003, Frederick Rice conveyed via warranty deed his undivided fifty percent interest to himself and his wife, Marian Rice, creating a tenancy by the entireties in all five parcels of land. (Doc. 1, Ex. F). After this conveyance, all five properties were owned as follows:

| | |
|---|---|
| Bernard Rice | 50% undivided interest |
| Frederick and Marian Rice | 50% undivided interest as tenants in the entirety. |

In 2004, for estate planning purposes, Bernard Rice and Frederick Rice began a series of discussions concerning the ownership and an equitable division of the five parcels among their respective families to ensure an orderly succession of ownership in the future.  The key meeting occurred in December 2004 at Frederick and Marian Rice's condominium at the Anastasia Condominiums in St. Augustine, Florida.  During the meeting, the following individuals were present at various times: 1) Bernard Rice; 2) Frederick Rice; 3) Marian Rice; and 4) Jonathan Rice (Bernard Rice's son and a licensed attorney in the state of Florida).

It is undisputed that the parties at the meeting engaged in some level of discussion concerning the division of the five parcels among Bernard Rice and Frederick and Marian Rice.  It is, however, disputed as to what precisely the parties agreed upon, if anything.  At the culmination of the meeting, the parties signed four blank warranty deeds, each of which was notarized by James W. Gilliam, the Anastasia condominium association manager and a friend of Frederick Rice.  (Doc. 59-4, Ex. C; Doc. 59-5, Ex. D; Doc. 59-9, Ex. F; Doc. 59-10, Ex. G; Doc. 59-12, Gilliam Dep., p. 8).  On two of the blank warranty deeds, Bernard Rice signed at the bottom as the grantor.  (Doc. 59-3, Bernard Rice Aff., ¶ 7; Doc. 59-4, Ex. C; Doc. 59-5, Ex. D).  On the two others, Frederick and Marian Rice signed at the bottom as the

grantors.  (Doc. 59-9, Ex. F; Doc. 59-10, Ex. G).  James Gilliam and Jonathan Rice signed all four warranty deeds as witnesses.

At the time of the signing in December 2004, there was no other information contained in any of the four warranty deeds other than these signatures and James Gilliam's notarization.  (Doc. 59-4, Ex. C; Doc. 59-5, Ex. D; Doc. 59-9, Ex. F; Doc. 59-10, Ex. G).  There was no information on the top of the four deeds concerning the date of execution, the identity and address of the grantor, the identity and address of the grantee or the consideration paid.  (Id.).  There was likewise no property description contained in the four deeds.  (Id.).  Moreover, at the bottom of the four deeds, there was no designation of the county in which the deeds were executed and no designation of how the notary (James Gilliam) confirmed the identities of the grantors.  (Id.).  James Gilliam also failed to note the date on which he notarized the deeds.  (Id.).[1]  Once Mr. Gilliam affixed his notary stamp to and signed the four deeds, he never saw them again until his deposition was taken in connection with this suit. (Doc. 59-12, 13, Gilliam Dep., p. 15, 29).

After the December 2004 meeting, Bernard Rice left to return to his home in Kansas and Frederick Rice maintained custody and control of the four blank warranty deeds.  (Doc. 59-3, Bernard Rice Aff., ¶ 12).  Frederick Rice asserts that the four

---

[1]    Currently, two of the four deeds remain in their original blank form, one signed by Bernard Rice as the grantor (Doc. 59-4, Ex. C) and the other signed by Frederick Rice and Marian Rice as grantors (Doc. 59-9, Ex. F).

warranty deeds were executed in blank for two reasons: (1) the deeds were to be held in escrow consistent with the parties' oral agreement as to the division of the five parcels until the deeds could be completed (this was purportedly done in part so as to not unduly delay Bernard Rice's return to his home in Kansas); and (2) to permit sufficient time for confirmation from a certified public accountant and estate planning lawyer that the agreed transaction would qualify as a 1031 Exchange under Internal Revenue Service Guidelines.  (Doc. 65-2, Ex. A, Frederick Rice Aff., ¶¶ 11, 13).

On February 2, 2005, Frederick Rice unilaterally filled in two of the blank warranty deeds to purportedly memorialize the oral agreement between the parties concerning the division of the five parcels of land.  (Doc. 59-5, Ex. D; Doc. 59-10, Ex. G; Doc. 59-14, Ex. J, Bernard Rice's Second Request for Admissions and Plaintiffs' responses thereto, ¶¶ 32-35).  In the February 2, 2005 deed in which Bernard Rice is the grantor, Bernard Rice conveys his 50% percent interest in three of the five parcels of land to Frederick and Marian Rice so that Frederick and Marian Rice (as husband and wife) own 100% fee simple title in those three parcels.  (Doc. 59-5, Ex. D).  In the February 2, 2005 deed in which Frederick and Marian Rice are the grantors, Frederick and Marian Rice convey their 50% interest to Bernard Rice in two of the five parcels so that Bernard Rice owns 100% fee simple title in those two parcels.[2]  (Doc. 59-10, Ex. G).

---

[2]    In each of the February 2, 2005 warranty deeds, the Schedule "A" with the property descriptions is omitted from the copies of those documents found at Doc. 59-

After Frederick Rice filled in the two warranty deeds and appended the schedules containing the property descriptions, the parties did not re-execute the warranty deeds. (Doc. 59-3, Bernard Rice Aff., ¶ 13; Doc. 59-13, Gilliam Dep., p. 29). Frederick Rice then caused the two completed warranty deeds (with the attached schedules containing the land descriptions) to be recorded in the public records of St. Johns County, Florida. (Doc. 18, Defendants' Counterclaim, p. 11, ¶ 13).

On February 8, 2005, Frederick Rice mailed to Bernard Rice copies of the documents (including copies of the recorded February 2, 2005 warranty deeds) with a "Land Exchange and Joint Venture Agreement" purportedly memorializing the parties' agreement.[3] (Doc. 65-2, Ex. A, Frederick Rice Aff., ¶ 13). On April 2, 2005, Bernard Rice replied to Frederick Rice's correspondence via letter stating, in essence, that the document he received in the mail did not resemble any agreement they had reached and that he merely signed the blank deeds in December 2004 to "preserve their brotherly relationship." (Id. at Ex. B).

On December 5, 2005, Bernard Rice filed a nine count Complaint for cancellation of the fraudulent deeds (Count I), to quiet title to the five parcels of land

---

5, Ex. D and 59-10, Ex. G. However, copies of the February 2, 2005 warranty deeds appended to the Complaint each contain a Schedule "A" containing the relevant property descriptions of the "conveyed" parcels. (Doc. 1-8, Ex. G).

[3]   The summary judgment record does not contain a copy of this letter or the "Land Exchange and Joint Venture Agreement."

(Counts II-VI), for partition of the five parcels of land (Count VII), an alternative count for constructive trust (Count VIII) and an action to appoint a receiver (Count IX).  On January 26, 2006, Frederick and Marian Rice filed an Answer and Counterclaims for unjust enrichment seeking management fees for management services provided for the parcels at issue (Count I) and an action for partition (Count II).  (Doc. 18).  On February 15, 2006, Bernard Rice answered the Counterclaims.  (Doc. 22).

## II.     APPLICABLE STANDARD

Summary judgment is proper where "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "The burden of demonstrating the satisfaction of this standard lies with the movant, who must present pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that establish the absence of any genuine material, factual dispute."  Branche v. Airtran Airways, Inc., 342 F.3d 1248, 1252-53 (11th Cir. 2003) (internal quotations omitted).  An issue is genuine when the evidence is such that a reasonable fact finder could return a verdict for the nonmovant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986).  In determining whether summary judgment is appropriate, a court must draw inferences from the evidence in the light most favorable to the nonmovant and resolve all reasonable doubts in that party's favor.  Centurion Air Cargo, Inc. v. United Parcel Serv. Co., 420 F.3d 1146, 1149 (11th Cir. 2005).

## III.   DISCUSSION

Under Florida law, "[t]o effect a valid conveyance of real property, a deed or other instrument must describe the property such that it is evident that a particular parcel, and not a different or unspecified one, is to be conveyed." Mendelson v. Great Western Bank, F.S.B., 712 So. 2d 1194, 1196 (Fla. 2d DCA 1998) (citing Simons v. Tobin, 104 So. 583 (Fla. 1925)); Lente v. Clarke, 1 So. 149 (Fla. 1886).  Florida law is liberal in favor of determining the actual parcel.  Mendelson, 712 So. 2d at 1196 (citation omitted).  "[A] description is sufficient if, by relying on the description read in light of all facts and circumstances referred to in the instrument, a surveyor could locate the land."  Id.  (citations omitted).

Parol evidence is admissible to determine the description so long as the instrument itself shows that the parties were contemplating a particular piece of property. Bajrangi v. Magnethel Enterprises, Inc., 589 So. 2d 416, 418 (Fla. 5th DCA 1991); Lente, 1 So. at 151, 155.  However, parol evidence is not admissible to determine the description when the parties deed an unspecified parcel of property, Patrick v. Sears, 19 Fla. 856 (Fla. 1883), or the deed contains an alternative description describing two distinct parcels, Carson v. Palmer, 190 So. 720, 721-22 (Fla. 1939).  Further, a deed which does not contain the name of the grantee is void. Myers v. Francis, 548 So. 2d 833, 834 (Fla. 3d DCA 1989).

The parties did not cite and the Court could not find a case factually on all fours

with the situation presented here.  However, the Court is guided by the long standing tenets of Florida real property conveyance law.  The initial question is the validity of the blank deeds signed during the December 2004 meeting.

The December 2004 deeds contain no information other than the signature of the grantor (Bernard Rice in one deed and Frederick and Marian Rice in the other), the witnesses' signatures (those of James Gilliam and Jonathan Rice) and the signature of notary James Gilliam.  The remainder of each deed is entirely blank.  Most glaringly, there is no property description or identification of the grantee.  When considering the import of the blank property description, the Court finds that this case is more in line with those cases holding parol evidence is inappropriate to determine the property description.  See Patrick, 19 Fla. 856 (parol evidence inappropriate because the description of "five acres of land, near Kissimmee City, in Orange County … to be selected by his agent" is too imprecise as the description shows the parties were not contemplating any particular five acres of land); Carson, 190 So. at 721-22 (deed at issue gave two inconsistent legal descriptions which described two separate parcels of property); Mitchell v. Thomas, 467 So. 2d 326, 329 (Fla. 2d DCA 1985) (the description at issue was in metes and bounds, but omitted two boundary calls, so that the parcel did not entirely close); compare Lente, 1 So. at 151, 155 (parol evidence admissible even when property is described with such imprecise language as "my forty near the Garrison lands, in Hernando County"); Mendelson, 712 So. 2d at 1197

8

(parol evidence admissible to determine property described in divorce judgment between former husband and wife only by the intersection in Hillsborough County, Florida on which it was located); <u>Bajranji</u>, 589 So. 2d at 419 (parol evidence admissible when description of property is by street address).

    Here, to give any legal effect to the blank December 2004 deeds, the Court is required to entirely add (1) legal descriptions of the conveyed land, and (2) the identity of the grantee.  This is not a situation as those in <u>Lente</u>, <u>Mendelson</u> and <u>Bajranji</u> where permitting the parties to use extrinsic information will allow them merely to pinpoint the location of the parcels without altering the substance of the deed.  Instead, similar to <u>Patrick</u>, <u>Carson</u> and <u>Mitchell</u>, the Court would have to allow parol evidence to fill in virtually all required information in the December 2004 deeds.  This is precisely the type of situation that Florida's precedent concerning patent ambiguities and parol evidence seeks to preclude.

    Further, to hold that the blank December 2004 deeds have any legal effect would vitiate the statute of frauds' requirement that a land conveyance be "in writing," rather than, as here, in the form of signed blank deeds with an alleged oral agreement to finalize the writing at a later time.  <u>See</u> Fla. Stat. §§ 689.01, 725.01; <u>see also</u> <u>Guest v. Claycomb</u>, 932 So. 2d 567, 568-69 (Fla. 5th DCA 2006) (statute of frauds defense applies in situation where grantor (plaintiff) deeds property to grantees (defendants) with the oral agreement that the defendants would deed the property back to plaintiff

when plaintiff repaid the loan or assumed the obligation to repay the loan; however, when plaintiff presents defendants with a deed to convey the property back to plaintiff, defendants refuse to execute the deed).  Clearly, the signed blank December 2004 deeds do not qualify as writings under the statute of frauds.  The statute of frauds likewise precludes an oral agreement for one party to unilaterally fill in the particulars (i.e., land description and identity of grantee) at some later date.

In fact, the parties' positions concerning the regularity (or lack thereof) of the blank December 2004 deeds and the subsequent February 2, 2005 deeds underscores the rationale behind the statute of frauds - that is, "to intercept the frequency and success of actions based on nothing more than loose verbal statements or mere innuendos." Tanenbaum v. Biscayne Osteopathic Hosp., Inc., 190 So. 2d 777, 779 (Fla. 1966) (quoting Yates v. Ball, 181 So. 341, 344 (1937)); Harris v. School Bd. of Duval County, 921 So. 2d 725, 733 n. 8 (Fla. 1st DCA 2006) (citations omitted).  Bernard Rice, in addition to asserting that the recorded February 2, 2005 deeds are substantively void, states that the blank December 2004 deeds at most represent an unenforceable agreement to agree concerning a division of the five St. Augustine, Florida parcels.  Frederick and Marian Rice take the position that the parties reached an oral agreement as to a division of the five parcels and executed the blank December 2004 deeds to hold the agreement in escrow until the parties could ensure themselves that the conveyances were proper 1031 Exchanges.  That

10

the Court is even asked to make this factual determination (should this issue proceed to trial) highlights the sound policy of requiring a written agreement for land conveyances under the statute of frauds.

Having determined that the blank December 2004 deeds have no legal effect, the remaining question is whether the February 2, 2005 deeds cure those defects. The Court holds that they do not.  When unilaterally filling in the blanks of the December 2004 deeds without any participation of Bernard Rice, Frederick Rice obeyed none of the execution formalities set forth in Fla. Stat. §§ 695.03 and 689.01. There were no additional subscribing witnesses, no new signatures by the grantor(s) and no new notarization.  Thus, the February 2, 2005 deeds are also of no legal effect.[4]

Frederick and Marian Rice rely on <u>Ospina-Baraya v. Heiligers</u>, 909 So. 2d 465 (Fla. 4th DCA 2005), for the proposition that the February 2, 2005 deeds are valid because the blank December 2004 deeds were merely held in escrow until they could be completed on February 2, 2005 pursuant to the parties' agreement.  Florida law indeed recognizes the right of a person to execute a deed conveying property and for it to be held in escrow until the occurrence of certain conditions subsequent.  <u>Ospina-</u>

---

[4]    The Court does not cast any aspersions on Frederick Rice for filling in the blank deeds on February 2, 2005.  It may very well have been a good faith effort to reduce an agreement (actual or perceived) to a formal writing.  However, in the context of land conveyance, Florida law does not allow the unilateral preparation of a warranty deed in this fashion.

Baraya, 909 So. 2d at 474 (citing Grossman v. Pollack, 100 So. 2d 660, 661 (Fla. 3d DCA 1958)).  However, this procedure assumes the deed is properly executed in the first place; it does not mean that parties can execute a blank deed with an understanding that the parties' oral agreement would be properly reduced to a writing at a later date.[5]  Thus, the deeds at issue, the blank December 2004 deeds and the recorded February 2, 2005 deeds, are void *ab initio.*

## IV.    CONCLUSION

For the foregoing reasons, summary judgment is due to be granted to plaintiff Bernard Rice on Counts I through VI in the Complaint.  At the conclusion of the case, the Court will enter a Judgment finding the December 2004 and February 2, 2005 deeds are void (Count I) and quieting title to the five parcels as requested in Counts II through VI of the Complaint.  The parties will proceed to trial on Count VII (Partition of Real Commercial Property) and defendants Frederick Rice and Marian Rice's counterclaims for compensation for management services associated with Frederick Rice's management of the five parcels (Count I) and for Partition (Count II).

---

[5]    The situation in Ospina-Baraya is far different from that here.  In Ospina-Baraya, a former husband and wife entered into a marital settlement agreement in which the wife transferred all of her right, title and interest (a one-third interest) in an entity that owned a *specified* parcel of land (a condominium) to her husband.  909 So. 2d at 474 (emphasis added).  While the Ospina-Baraya court held that a writing granting an interest in property could be held in escrow, the situation there (unlike here) involved a document with a full description of the property and a detailed writing to memorialize the parties' respective rights and obligations with respect to the property.

Accordingly, it is hereby **ORDERED**:

1.    Plaintiff Bernard Rice's Motion for Partial Summary Judgment (Doc. 59) is **GRANTED**.

2.    The parties will proceed to trial before the undersigned on **Monday, May 14, 2007 at 9:00 a.m.**  As discussed at the status hearing, the parties should file an appropriate Pretrial Stipulation pursuant to Local Rule 3.06 no later than **May 10, 2007.**  On even date, the parties should also file a short trial brief on the partition and unjust enrichment issues that remain to be tried.

**DONE AND ORDERED** at Jacksonville, Florida this <u>2nd</u> day of May, 2007.

TIMOTHY J. CORRIGAN
United States District Judge

t
copies: counsel of record

13